$400

JFL

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CHARLES W. CARSON,**

    **Plaintiff**

    **v.**

**WILLOW VALLEY COMMUNITIES,
WILLOW VALLEY LIVING,**

    **Defendants**

**CIVIL ACTION NO.**

**JURY TRIAL DEMANDED**

# 17   2840

## COMPLAINT

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§1331, 1343. This action arises under retaliation under Equal Employment Opportunity Commission (EEOC), violation of The Age Discrimination in Employment Act of 1967 (ADEA), violation of Occupational Safety and Health Administration (OSHA) Section 11c of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§651-678 ("OSH Act"), Title 38 §4212 Vietnam Era Veterans' Readjustment Assistance Act (VEVRAA), and Title 42 US §12203 Prohibition against retaliation & coercion. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a), under PA tort – retaliatory discharge, to hear and adjudicate state law claims.

2. This action seeks for declaratory, injunctive, monetary, punitive, and other appropriate relief is brought by Plaintiff Captain Charles Carson.

**PARTIES**

3. Plaintiff Charles W. Carson is a resident of Lancaster, Pennsylvania.

4. Defendant Willow Valley Communities a company incorporated in Commonwealth of Pennsylvania.

5. Defendant Willow Valley Living is a company incorporated in Commonwealth of Pennsylvania and a management body of Willow Valley Communities.

6. Hereinafter, Willow Valley Communities and Willow Valley Living are collectively Willow Valley.

**FACTUAL ALLEGATIONS**

7. Plaintiff Charles W. Carson started employment at Willow Valley Communities on October 24, 2014.

8. Plaintiff's job title at Willow Valley Communities clubhouse (30,000 sf two-story entertainment and dining facility) along Route 272 three and one half miles South of Lancaster City) was Security Officer/Concierge.

9. Plaintiff's job duties at Willow Valley Communities included: making sure the clubhouse building environs were safe and secure for the residents of Willow Valley Communities; Concierge duties at the clubhouse and

interface with the clubhouse Indoor Attendant on duty to facilitate the safety and security of the residents of Willow Valley Communities.

10. Plaintiff developed friendly and courteous relationships with Willow Valley Communities residents who came over to the Clubhouse.

11. Plaintiff reported to Mr. Roger Zerphey, Director of Security, Safety and Transportation (Security Corporate) as did two other Concierge at the Clubhouse.

12. The other Concierge and Indoor Attendants reported to Ms. Cindy Sawicki, Director of Clubhouse & Community Connection.

13. Plaintiff worked every Friday from 1530 hours local time until 2330 hours local time (close) with the same shift hours every Saturday.

14. No meal or any break was ever allowed during Plaintiff's eight (8) hour duty period at the clubhouse.

15. Plaintiff also was required to work every Monday from 1530 hours local time until closing at 1730 hours local time.

16. Plaintiff was paid $10.50/hour, a pay scale below all of the other Security Corporate Officers, except the replacement Security/Concierge hired after Plaintiff's retaliatory discharge, designed to create an appearance of no age discrimination practice, after Plaintiff's retaliatory discharge.

17. Plaintiff did not receive any security guard training other than the Clubhouse Concierge duties, however Plaintiff's previous professional experience as a combat-rated US Air Force Command Pilot and Major Commercial Airlines Captain included extensive training and experience in matters of security and safety. Plaintiff held Top Secret Security Clearances during his tenure as a US Air Force Command Pilot.

18. In fact, Plaintiff was not given a security uniform throughout his six (6) months or so of employment until early April, 2015 immediately prior to his termination. This race to proffer Plaintiff a security uniform immediately prior to his retaliatory discharge was designed to create the illusion that Defendant had no retaliatory animus towards Plaintiff prior to their retaliatory discharge. All other security officers wore Willow Valley security uniforms.

19. The majority of the concierge training was with Security Officer Jeff Ross (the only daytime shift Security Corporate) and with Sue Adams (The Clubhouse Concierge/Guest Relations).

20. The training was focused on the varied concierge duties and the close interface with the Indoor Attendant which was usually Mr. Barry Huber whose son Brian was also an Indoor Attendant.

21. Mr. Roger Harvey a Navy Retired Chief Petty Officer who was a Clubhouse Indoor Attendant was also working closely with Plaintiff on weekends when Mr. Barry Huber was absent.

22. Plaintiff had much colloquy with both Mr. Harvey and Mr. Barry Huber regarding safety deficiencies at the Clubhouse.

23. Plaintiff followed Willow Valley Living COO Dave Haverstick's admonitions during orientation religiously. These included; 1) Friendliness is important, perpetrate friendliness by verbally acknowledge passers- by. 2) Don't leave brains in the vehicle at work! Willow Valley is a Leader. We need your fresh eyes. Our System Processes Need Looked at. Your New Perspective Is Needed. We need questions from Team Members. 3) Share in a constructive way. Willow Valley needs a culture of greater positivity to develop a more exciting workplace with high expectations that will have a high impact on resident lives.

24. Plaintiff instituted or caused to be instituted several complaints and or proceedings against Willow Valley under or related to the OSH Act.

25. The dates of these complaints and proceedings were January 17, 2015, March 27,2015, April 13, 2015 and culminating in an OSHA Complaint on April 16, 2015.

26. Plaintiff was requested by his supervisor Mr. Zerphey, to attend a meeting in his office at 1500 hours local time immediately thirty (30) minutes prior to Plaintiff's usual shift at the Clubhouse scheduled for 1530 hours local time on Friday April 17, 2015.

27. This requested meeting was a direct result of a series of emails to Mr. Zerphey from Ms. Cindy Sawicki, Director of the Clubhouse of Willow Valley Living in regards to Plaintiff's emails to herself and Mr. Zerphey sent by Plaintiff on January 17, 2015 (**Exhibit A**) and March 27, 2015 (**Exhibit B**) outlining emergency equipment and emergency egress irregularities and deficiencies at the Clubhouse.

28. Plaintiff arrived at Mr. Zerphey's office a few minutes early and sat down with Mr. Zerphey and Mr. Jim Tracy, Director of Maintenance at Willow Valley Living and direct supervisor to Mr. Zerphey.

29. Plaintiff had little contact with Mr. Tracy up until this day and was not informed that Mr. Tracy would be sitting in the meeting.

30. Mr. Zerphey began the meeting by referring to Plaintiff's January 17, 2015 email "Questions re Fire and Emergency Egress at the Clubhouse" (**Exhibit A**)

31. Plaintiff's email dated January 17, 2015 referred to his concern over Willow Valley's potential violation of OSHA 29 CFR 1910 subparts E&L

as well as the Pennsylvania Department of Labor and Industry which issues permits under the Fire & Panic Act.

32. To Plaintiff's email, Mr. Zerphey expressed his clear discomfort by stating that Plaintiff should not have included multiple other managers in his email than Mr. Zerphey and "maybe" Ms. Sawicki (**Exhibit C**).

33. Mr. Zerphey asked in his email what had transpired for Plaintiff to bring up the safety issues, although it was ok for Plaintiff to bring up such issues to the management.

34. Mr. Zerphey and Mr. Tracy both told Plaintiff that all Willow Valley needed was "shift reports" from employees like Plaintiff and to address safety matters only to the direct supervisor.

35. Plaintiff further shared his concerns that the restaurant manager Mr. Chris Trendler had told one of the Clubhouse team members that dishwasher personnel by the name of Jonathan Balaguer left his dishwashing job at the Clubhouse restaurant because Plaintiff allegedly personally hired Mr. Balaguer away.

36. Plaintiff went on to further share other instances of inappropriate comments and colloquy by Mr. Trendler to Plaintiff at the Clubhouse. These comments and questions on Plaintiff's part were met by silence on the part of Mr. Zerphey and Mr. Tracy.

37. During the meeting, Mr. Zerphey presented a written warning/Willow Valley Performance Evaluation to Plaintiff.

38. This written warning/ Willow Valley Performance Evaluation was unilaterally completed by Mr. Zerphey and it was done so in violation of Willow Valley's own Team Leader Information Manual requirements.

39. The Performance Improvement Plan as per Willow Valley's own requirements demand that the Team Member fill out the Team Member Action Plan in the presence of the Team Leader Mr. Zerphey, not by the Team Leader as was done by Mr. Zerphey, the day prior to Plaintiff's retaliatory discharge.

40. Furthermore, it is instructive that this pre-prepared document (Willow Valley Performance Improvement Plan) was signed and dated April 16, 2015, prior to the April 17, 2015 scheduled meeting, to make it appear that the disciplinary action was taken a day prior to OSHA Area Director Kevin Kilp's personal telephone call to Mr. Zerphey that occurred on April 17, 2015 at 9:44am, several hours before Plaintiff's meeting with Mr. Zerphey at 1500 hours local time.

41. By backdating the document one (1) day prior to Plaintiff's direct supervisor Mr. Zerphey's pre-scheduled disciplinary meeting of April 17,

2015 (1500 hours local time), Mr. Zerphey was attempting to conceal his
true motive of retaliation.

42. This patent deviation from Willow Valley's mandatory human resources
requirements, shows that Mr. Zerphey wished to predate the Performance
Improvement Plan prior to their notification by OSHA that Plaintiff had
filed an OSHA Complaint.

43. Complainant is able to show irrefutable evidences that Willow Valley
violated Section 11(c) of the OSH Act because the Complainant's
protected activity was a motivating factor in Willow Valley's decision to
take an unfavorable employment action against Plaintiff.

44. Immediately subsequent to Willow Valley's notification of Plaintiff's
OSHA complaint by OSHA, Willow Valley, on the same day of their
notification by OSHA, terminated the employment of Plaintiff.

45. In order to confuse and obfuscate, Willow Valley violated and contradicted
their own Team Leader Handbook mandatory procedures by back dating
and completing the Team Leader Performance Evaluation unilaterally, by
their manipulation and fabrication of the Team Member Action Plan that
was to be completed by the employee on the meeting date (April, 17,
2015).

46. It is patent that this manipulation and fabrication was meant to confuse and obfuscate and make it appear that Respondent had completed the adverse evaluation prior to their being notified by OSHA of Plaintiff's OSHA Complaint on the morning of April 17, 2015.

47. This spurious conduct was meant to confuse and obfuscate and falls within the conduct which will allow Emotional Distress and Punitive damages under the new OSHA Investigations Manual requirements (**Exhibit D**).

48. The notification by OSHA to Mr. Zerphey that Plaintiff had filed an OSHA Complaint occurred at 0944 hours local time on April 17, 2015, the morning of Plaintiff's retaliatory discharge by Mr. Zerphey.

49. Willow Valley Performance document was completed by Mr. Zerphey and not by Plaintiff as required by Willow Valley mandatory human resources requirements, and predated to April 16, 2015 so as to lead one to believe that its production occurred prior to the OSHA notification that Plaintiff had filed a complaint.

50. Plaintiff opines now, looking at the totality of the circumstances, that a reasonable person could only come to one conclusion.

51. Plaintiff's property interest in his employment was terminated on April 17, 2015 as a direct nexus to his safety speech regarding Willow Valley's purposeful failure to obey OSHA requirements.

52. Willow Valley does not take it obligations under OSHA or Title VII seriously.

53. Furthermore, Plaintiff is a Vietnam Era combat veteran having flown combat missions as a US Air Force pilot.

54. Willow Valley is a federal contractor providing services through TRICARE (DOD-formally Champus), therefore Willow Valley falls under the purview of VEVRAA. Willow Valley is a Federal Contractor, irrespective of their failure to follow the mandatory directives required of their status.

55. There is currently a moratorium in place regarding enforcement by OFCCP (Office of Federal Contract Compliance Programs) of the affirmative obligations required of TRICARE subcontractors, that will end on May 7, 2019. The secondary purpose of the OFCCP Directive (DIR) 2014-01 included providing outreach and technical assistance to HCP's such as Defendant Willow Valley. The moratorium does not apply to the processing of complaints of discrimination under 41 CFR 60-1.24; 41 CFR 60- 300.61 and 41 CFR 60-741.61. As a bonified TRICARE subcontractor, Defendant Willow Valley is not relieved of their legal requirement to conform to the requirements of VEVRRA, only relieved from any enforcement action by OFCCP until May 7, 2019 or after. Therefore,

Defendant is still in violation of VEVRRA and by their intentional refusal
to follow the legal requirements of the ACT, violated Plaintiff's VEVRRA
protections.

56. Willow Valley has many retired military officers and a large contingent of
retired General and Flag Officers residing at their multi-campus facility.
Therefore, Willow Valley has and will continue to be under the
enforcement jurisdiction of OFCCP regarding complaints of discrimination
and therefore is obligated to comply with the specific federal procurement
executive orders, statutes and regulations.

57. VEVRAA prohibits federal contractors and subcontractors from
discriminating in employment against protected veterans, and requires
these employers to take affirmative action to recruit, hire, promote, and
retain these veterans. As revised, the regulations strengthen the affirmative
action provisions of the regulations to aid contractors in their efforts to
recruit and hire protected veterans and improve job opportunities for
protected veterans (Department of Labor Office of Federal Contract
Compliance Programs, or OFCCP, Regulations Implementing the Vietnam
Era Veterans' Readjustment Assistance Act).

58. Plaintiff's employment was terminated by Willow Valley as a direct and
subsequent result of his OSH Act complaints (a protected activity) of

12

January 17, 2015, March 27, 2015, April 13, 2015 and April 16, 2015 instead of retaining and promoting Plaintiff, a Veteran, covered under VEVRAA.

59. Willow Valley, while Plaintiff was employed, failed to post FMLA, EEOC, ADEA, ADA, FLSA, USERRA, OSHA and PAHRC as required by law.

60. Corporations, said the United States Supreme Court are artificial people, yet it is real living people, the agents of the corporation that are given the authority to protect and secure the safety and liberty of the residents and employees of Willow Valley. With this great authority and power, comes great responsibility. This responsibility has been largely ignored by those who were appointed to fulfill its promises.

61. At the April 17, 2015 meeting, Mr. Zerphey demanded that Plaintiff sign the Performance Improvement Plan document, dated April 16, 2015 that had been drafted by Mr. Zerphey in violation of mandatory Willow Valley human resources procedures.

62. Plaintiff asked Mr. Zerphey for a legal pad and proceeded to handwrite a declaration, which he then hand- delivered to Mr. Zerphey.

63. The declaration by Plaintiff declared that there existed no labor law posters such as FLSA, FMLA, EEOC, ADEA, ADA, PAHRC, USERRA,

VEVRRA, OSHA, and OSHA 300 recordkeeping log anywhere at the
Willow Valley Clubhouse.

64. Mr. Zerphey stated that he could not understand what Plaintiff had written
so Plaintiff handed the document to Mr. Tracy who also opined that he
could not read Plaintiff's writing.

65. Mr. Zerphey then asked that Plaintiff read the declaration out loud at which
Plaintiff immediately complied.

66. Immediately subsequent, Mr. Tracy became visibly angry and demanded in
a loud voice, "where are you going with all of this?" Furthermore,
Plaintiff's proffering to Mr. Zerphey and Mr. Tracy of his written notice of
Willow Valley Livings "Failure to Post" Federally mandated Employment
Law (Employee Rights), postings in the Clubhouse, motivated Mr.
Zerphey's discriminatory dismissal of Plaintiff, and was thus, retaliatory.

67. Plaintiff simply and quietly stated, that he could not sign something that
was not true and then stated that he was late to his duty station. Mr.
Zerphey, noticeably angered, shouted, "Charles, you are terminated!"

68. Thus the meeting ended abruptly at 1620 hours local time April 17, 2015
after eighty (80) minutes of meeting time.

69. Plaintiff walked out of the meeting only after his employment was abruptly
terminated by Mr. Zerphey.

70. Immediately subsequent to terminating Plaintiff's employment, Willow Valley issued a BOLO (Be on the Look Out) against Plaintiff and circulated around Willow Valley property as if Plaintiff was a dangerous individual.

71. At no time during this meeting was Plaintiff angry, frustrated or insubordinate as Mr. Zerphey and Ms. Sawicki have so claimed in their joint communiqué, i.e., Performance Improvement Plan document of April 16, 2015(backdated to conceal retaliatory motive).

72. It is patent from a review of the email communications beginning with Plaintiff's email of January 17, 2015 regarding fire and egress deficiencies at the Clubhouse that the discipline and subsequent dismissal of Plaintiff, were a direct and consequential result of Plaintiff's "safety speech" that he first spoke on January 17, 2015 after Willow Valley resident Mr. Frank Fox had expressed his grave concerns to Plaintiff as Security Officer, regarding the safety and legality of Mr. Zerphey's "locking of emergency exit doors" at the Clubhouse, during hours of operation.

73. Furthermore, Plaintiff's dismissal may represent a direct retaliation due to Plaintiff's "mandatory reporting" of possible "elderly abuse" of residents of Willow Valley Communities. Furthermore, since Mr. Zerphey was informed via telephone call from OSHA that a complaint had been filed re

"alleged workplace hazard(s)" at the Clubhouse, his dismissal of Plaintiff, immediately subsequent to the OSHA telephone call is retaliatory. Plaintiff raised his concern over this matter in his detailed letter to Willow Valley board of directors dated April 25, 2015 (**Exhibit E**).

74. Furthermore, the retaliatory discharge of Plaintiff by Mr. Zerphey was motivated by Plaintiff's previous help to Clubhouse dishwasher Mr. Jonathan Balueger in drafting and filing of a EEOC/Human Relations Commission Complaint in March of 2015.

75. At no time did Plaintiff resign nor shirk his duties and responsibilities to the safety and security of the residents and employees of Willow Valley Communities.

76. Plaintiff did not allow these important notices to rest upon the shoulders of those who were too afraid to act, as they feared retaliation by Willow Valley management.

77. Whenever the Pennsylvania Legislature allowed the Pennsylvania Fire and Panic Act to sunset, the body gave the 2561 municipalities in Pennsylvania the choice to Opt In or to Opt Out under Act 45 of 1999 regarding the Uniform Construction Code (UCC) regulations. The municipality where Defendant Willow Valley resides is located within the boundaries of West Lampeter Township, which chose to Opt In. To fulfil their responsibilities

under Act 45 of 1999, West Lampeter was responsible to fulfill the

following responsibilities:

> All opt-in municipalities must fulfill the following responsibilities:
>
> 1. Enact an ordinance adopting the requirements of the Pennsylvania Construction Code Act (Act 45, as amended) and the regulations implementing the act.
>
> 2. Employ or contract for the services of a person who holds L&I certification as a Building Code Official and notify the Department as to who is serving in this capacity.
>
> 3. Employ or contract for the services of persons certified to perform residential and commercial code enforcement approvals.
>
> 4. Establish a local appeals board that will hear appeals of code officials' decisions and interpretations, and decide upon requests for variances and extensions of time.
>
> 5. Establish and publicize a schedule of fees that must be paid for UCC services. (The fee charged for petitions to the local appeals board must not exceed the actual administrative costs of hearing appeals --- see 34 Pa Code §403.121(h).)

78. Plaintiff now comes before this Honorable Court to allege that the patent

neglect of West Lampeter Township regarding their duties and

responsibilities as an Opt In municipality under Act 45 of 1999, was a

direct an consequent result of the harm suffered by Plaintiff as a result of

his "safety speech" that he first uttered on January 25, 2015 at the request

of Willow Valley Communities resident Mr. Frank Fox. Had West

Lampeter Township fulfilled their duties and responsibilities under Act 45

of 1999, in regard to the inspection of the Willow Valley Communities

Clubhouse, the "Safety Speech" promulgated by the demand of Willow

Valley Communities resident Mr. Frank Fox would have been mooted by the proper and diligent inspection required under the UCC (Uniform Construction Code) regulations prior to occupancy.

79. Even after Plaintiff contacted the West Lampeter Township BCO (Building Construction Official), Mr. Kevin Hertzog on May 4, 2015 by telephone, Mr. Hertzog did not implement any proceeding or inspection of Defendant Willow Valley's Clubhouse. In fact, Mr. Hertzog admonished Plaintiff that if he were to address such "safety issues" with Defendant Willow Valley, that it would most likely result in the termination of his employment! By way of further allegation, West Lampeter Township did nothing to rectify the patent code deficiencies at the Willow Valley Clubhouse. In fact, it took OSHA a full year before they heavily fined and forced Defendant Willow Valley to correct the most egregious of their code deficiencies in the Willow Valley Clubhouse. This endangerment to the staff and residents of Willow Valley would not have occurred if West Lampeter Township had fulfilled their responsibilities under the UCC as required by Act 45 of 1999.

80. The natural question arises regarding any potential liability of the Opt In Township, when their officials fail to properly enforce the UCC (Uniform Construction Code) as is their responsibility under Act 45 of 1999?

81. The Pennsylvania Department of Labor and Industry, may have some recourse regarding the failure of the Opt In municipality to properly enforce the UCC as is their requirement under Act 45 of 1999.

## COUNT I [violation of Equal Employment Opportunity Commission (EEOC) - retaliation]

82. Plaintiff repeat and re-allege paragraphs 1-81 above as though fully set forth herein.

83. The acts and conduct of defendants Willow Valley Communities and Willow Valley Living, evidenced by their intentional failure to post legally mandatory EEOC/OSHA/HRC/VEVRRA in the clubhouse, or any other area where employees congregate was to terminate the employment of Plaintiff immediately subsequent to Plaintiff's hand written notice delivered on April 17, 2017.

84. The acts and conduct of defendants Willow Valley Communities and Willow Valley Living by retaliating against Plaintiff for helping his fellow co-worker Jonathan Balueger in drafting and filing of a EEOC/Human Relations Commission Complaint in March of 2015.

## COUNT II [The Age Discrimination in Employment Act of 1967 (ADEA)]

85. Plaintiff repeat and re-allege paragraphs 1-84 above as though fully set forth herein.

86. The acts and conduct of defendants Willow Valley Communities and Willow Valley Living by paying Plaintiff $10.50/hour, a pay scale below all of the other Security Corporate Officers, except the replacement Security/Concierge hired after Plaintiff's retaliatory discharge, designed to create an appearance of no age discrimination practice, after Plaintiff's retaliatory discharge.

**COUNT III [violation of Occupational Safety and Health Administration (OSHA) Section 11c of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§651-678 ("OSH Act")-retaliation]**

87. Plaintiff repeat and re-allege paragraphs 1-86 above as though fully set forth herein.

88. The acts and conduct of defendants Willow Valley Communities and Willow Valley Living by their direct action to terminate the employment of the Plaintiff after Plaintiff's numerous reports regarding Willow Valley's UCC code violations and OSHA safety concerns regarding egress and fire safety.

## COUNT IV [violation of Vietnam Era Veterans' Readjustment Assistant Act (VEVRAA) – retaliation]

89. Plaintiff repeat and re-allege paragraphs 1-88 above as though fully set forth herein.

90. The acts and conduct of defendants Willow Valley Communities and Willow Valley Living by their intentional failure to post the legally required VEVRAA notices in the clubhouse, or any other area where employees congregate, represents a patent disregard by Willow Valley of their mandatory obligations under VEVRRA. VEVRRA contains Federal Affirmative Action provisions that require Willow Valley to recruit, promote and retain eligible Veterans. Willow Valley violated these Affirmative Action provisions, by their spontaneous termination of Plaintiff's employment on April 17, 2015.

## COUNT V [PA tort – retaliatory discharge]

91. Plaintiff repeat and re-allege paragraphs 1-90 above as though fully set forth herein.

92. The acts and conduct of defendants Willow Valley Communities and Willow Valley Living as set forth in COUNT I to IV are subject to PA tort

– retaliatory discharge under supplemental jurisdiction of this Court under 28 U.S.C. §1367(a).

WHEREFORE, Plaintiff requests this Court to Order:

1. Compensatory damages;

2. Punitive damages;

3. A declaratory judgment;

4. Injunctive relief;

5. Attorney's fees and costs (if applicable);

6. All other appropriate relief.

Dated: June 21, 2017

Plaintiff, Pro Se